Filed 12/2/15  Gabriela M. v. Superior Court CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GABRIELA M., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF CONTRA COSTA COUNTY, <br><br> Respondent; <br><br> CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, <br><br> Real Party in Interest. | A146041 <br><br> (Contra Costa County Super. Ct. No. J15-00337) |

By this petition for an extraordinary writ (Cal. Rules of Court, rule 8.452) petitioner Gabriela M., the mother of Abigail M., seeks to vacate the order of respondent Superior Court of Contra Costa County setting a hearing to terminate her parental rights in accordance with Welfare and Institutions Code section 366.26.[1]  Gabriela asserts two claims of error:  one, the court's order that she be denied reunification services is not supported by substantial evidence and, two, the court erred in relying on inadmissible hearsay.  We conclude her contentions are without merit, and we deny the petition on its merits.

---

[1] All statutory references are to the Welfare and Institutions Code.

1

# BACKGROUND[2]

## Abigail's Removal from Gabriela's Care

Abigail was born in November 2014. When she was almost four months old, real party in interest Contra Costa County Children & Family Services Bureau (Bureau) was alerted to concerns regarding Gabriela's mental health and her ability to adequately care for and supervise her infant daughter. The Bureau's social worker initially had difficulty contacting Gabriela to investigate the allegations, as she appeared to be eluding the social worker.

In the process of investigating the family's child welfare history, the social worker learned of a recent referral in Alameda County stemming from neglect concerns due to Gabriela's mental health issues. The referral resulted in the provision of voluntary services in an effort to safely maintain Abigail in the home with her mother.

The social worker also learned of Gabriela's extensive case history in Los Angeles County, which included the detention of Abigail's three half siblings (born in 2002, 2004, and 2006), Gabriela's failure to complete her reunification plan, and the termination of services with custody granted to the children's father. A Los Angeles County social worker advised that there should be extreme concern over Abigail's safety due to Gabriela's extensive history with mental illness that remained undiagnosed due to her failure to be assessed by a mental health professional.

After multiple attempts to communicate with Gabriela, the social worker finally made contact with her on March 13, 2015. Gabriela denied having any current mental health problems that affected her ability to provide for Abigail's care and stated that she had recently been evaluated, although she was unable to provide any documentation to substantiate her claim. Gabriela also claimed she had fully complied with her voluntary case plan in Alameda County, a claim directly contradicted by an Alameda County social worker and child welfare records.

---

[2] This writ was brought only by Gabriela. We omit details regarding Abigail's father, about whom little was apparently known by the Bureau.

Given the ongoing concerns about Gabriela's mental health, her failure to comply with voluntary services in Alameda County, her lengthy child welfare history, and her failure to reunify with her three older children, the Bureau determined that Abigail was at imminent risk of harm and removed her from Gabriela's care.

**Petition**

A petition filed on March 17, 2015 alleged that Gabriela failed to protect Abigail (§ 300, subd. (b)) due to her untreated mental health problems that impaired her ability to care for and supervise her child. It further alleged abuse or neglect of a sibling (*id.*, subd. (j)), in that on January 14, 2015, Gabriela's reunification services were terminated as to Abigail's half siblings, who had been removed from Gabriela's care due to her untreated mental health problems.

**Detention Report**

A March 18, 2015 detention report provided additional details regarding Gabriela's lengthy history with Los Angeles County's child protective services:

"The minor children . . . were removed from their mother and placed with their father. On 6/6/07 the court terminated jurisdiction and the children were left in the care of their father. Mother failed to comply with the case plan requirements which included but [were] not limited to a Psychological Evaluation, Counseling and Parenting classes. In 3/08 Petitions were filed once again and the minor children were removed from the father. In 1/09 the court placed the children with the mother and requested the case to be transferred to Contra Costa County where the mother was residing at the time. On 7/22/09 the Contra Costa Court closed the case giving custody to the mother.

"On 4/15/14 the following b-1 count was substantiated:

" '. . . *Gabriela M.[] has mental and emotional problems, including a history of psychiatric hospitalizations and auditory hallucinations, which render the mother unable to provide regular care and supervision of the children. The mother failed to take the mother's psychotropic medication as described. The mother failed to obta[]in the recommended mental health treatment. The children are prior dependents of the Juvenile Court due in part to the mother's mental and emotiona[l ]problems. Such mental and*

3

*emotional problems on the part of the mother endangers the children's physical health and safety and places the children at risk of physical harm, damage and danger.'*

"The court ordered the children to be returned to their father with a Family Reunification plan for the mother in addition to a 3 year restraining order protecting both the father and children from [Gabriela].  On 1/15/15 court once again terminated Jurisdiction giving custody of the minor children to the father."

**Disposition Report**

In a report prepared for a May 15, 2015 disposition hearing, the Bureau recommended that the court order reunification services for Gabriela, stating:  "Mother is to be commended for her ability to provide adequate care for the child prior to her removal from the home.  However, given the lengthy child welfare history and the repeatedly substantiated concerns about her mental health, the Bureau contends that her failure to engage in any ongoing mental health care severely impacts her ability to provide appropriate care for Abigail.  Interviews with several different people who are familiar with mother have described her tendency to function well initially.  However, she has a frequent tendency to mentally decompensate and engage in bizarre behaviors that have resulted in emotional trauma and significant neglect for her older children.  Furthermore, her failure to engage in services to reunify with her older children and safely maintain [Abigail] in the home is a clear indication of substantially high risk.  The Bureau, therefore, contends that a plan of Family Reunification is the most appropriate case plan recommendation at this time."

**June 26, 2015 Status Update**

The disposition hearing was continued to June 26, so the Bureau submitted a status report prior to the continued hearing date.  It noted that Abigail was doing well in her placement, where she had resided since her removal from Gabriela's care.  Gabriela had been consistent in visitation, and her interactions with her daughter were affectionate and appropriate.

The Bureau also reported that since June 2, Gabriela had been seeing therapist Anneka Citrin for a mental health assessment.  Gabriela had also provided the social

4

worker with contact information for therapists and facilitators from whom she was going to be receiving domestic violence counseling and parenting therapy.

Regarding disposition, the Bureau informed the court that it had "previously erred in its assumption of having the discretion to recommend services" for Gabriela. Instead, the Bureau noted that pursuant to the bypass provision set forth in section 361.5, subdivision (b)(10), the court "shall not" order reunification services where reunification services had previously been terminated in a proceeding involving a sibling or half sibling of the detained child because the parent failed to reunify and the parent had not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling, unless the court found by clear and convincing evidence that reunification was in the child's best interest.

The Bureau represented that on January 23, 2015, because Gabriela had failed to engage in services, the Los Angeles County juvenile court granted sole custody of her three older children to their father and terminated the dependency proceeding. Further, the Bureau informed the court that although Gabriela had agreed to participate in this case, she "remained resolute in her contention that she does not have a mental health problem that impairs her ability to provide adequate care and supervision for the child despite very clear evidence to the contrary." Given Gabriela's ongoing "lack of insight and failure to accept responsibility for her parenting problems that led to the termination of reunification services for [Abigail's] half-siblings," the Bureau submitted that there was not clear and convincing evidence that reunification services would be in Abigail's best interest. It therefore recommended that the court bypass reunification services for Gabriela.

**Bureau's Requests for Judicial Notice**

The disposition hearing was again continued, and in July and August, the Bureau filed two requests for judicial notice of the court records in three dependency cases filed in Los Angeles County involving Gabriela's three older children. The documents showed the following child welfare history:

5

*2006 Petition*

In 2006, a section 300 petition alleged that Gabriela had placed her three children at risk for harm because she had mental and emotional problems and had previously been involuntarily hospitalized for the evaluation and treatment of her psychiatric condition. The court sustained the allegation, ordered the children placed with their father under a family maintenance plan, and ordered reunification services for Gabriela. Gabriela was ordered to undergo a mental health assessment, comply with treatment and medication recommendations, and participate in parenting and individual counseling.

After Gabriela failed to comply with her case plan, the court granted custody of the children to their father and terminated the dependency proceeding in June 2007.

*2008 Petition*

On March 3, 2008, a petition was filed alleging that the father had inappropriately disciplined the children and Gabriela had "mental and emotional problems. On prior occasions, the mother was involuntarily hospitalized for the evaluation and treatment of the mother's psychiatric condition. Due to the mother's mental and emotional problems, the mother is unable to provide regular care and supervision for the children. The mother's mental and emotional problems endangers [*sic*] the children's physical and emotional health and safety and places the children at risk of physical and emotional harm and damage." The allegations as to Gabriela were sustained, and the court ordered that she receive family reunification services, including that she undergo a mental health assessment.

In a June 2008 report, marriage and family therapist Don Koolmees informed the court that he had seen Gabriela three times and she showed no present signs of mental illness or duress. In his opinion, she posed no danger to the health and welfare of her children. Gabriela had also completed a parenting class.

In January 2009, the children were placed with Gabriela under a family maintenance plan, and the matter was transferred to Contra Costa County, where Gabriela was living with her sister. In July, the court granted custody of the children to Gabriela, and terminated the proceeding.

*2014 Petition*

A petition filed February 10, 2014 alleged that Gabriela physically abused one of her children and left her alone without adult supervision and that she failed to protect all three of her children, as follows: ". . . Gabriela M[.], has mental and emotional problems, including a history of psychiatric hospitalizations and auditory hallucinations, which render the mother unable to provide regular care and supervision of the children. The mother failed to take the mother's psychotropic medication as prescribed. The mother failed to obtain recommended mental health treatment. The children are prior dependents of the Juvenile Court due in part to the mother's mental and emotional problems. Such mental and emotional problems on the part of the mother endangers the children's physical health and safety and places the children at risk of physical harm, damage and danger."

The court released the children to their father, and ordered monitored visits for Gabriela. It subsequently sustained the allegations concerning Gabriela, and ordered family maintenance services for the father and family reunification services for Gabriela. Gabriela was ordered to participate in individual and psychological counseling and take all prescribed psychotropic medications.

A January 14, 2015 status report advised the court that Gabriela had not made significant progress on her case plan. She had completed a parenting class, but had not enrolled or participated in individual therapy or counseling, nor had she been assessed for any medication or otherwise addressed the issues that necessitated the dependency proceeding. A week later, the court granted the father sole custody of the children and terminated the proceeding.

**Contested Jurisdictional and Dispositional Hearing**

On August 20, 2015, the matter came on for a contested jurisdictional and dispositional hearing.[3] The court accepted into evidence a letter from therapist Citrin, in

---

[3] The court had previously held a jurisdictional hearing, at which it sustained the allegations in the petition and declared Abigail a dependent of the juvenile court. For

7

which she stated that she "first met with [Gabriela] to begin a clinical and biopsychosocial assessment on June 2, 2015; we engaged weekly since then, continuing the assessment process, exploring life and treatment goals, and beginning to engage in treatment. She is consistent in her attendance and communication with this therapist, and has reported consistent visitations with her infant child, as well as increased motivation and wellbeing associated with obtaining employment."

The hearing then turned to the issue of jurisdiction. Counsel for the Bureau and Abigail argued that the allegations in the petition were supported by overwhelming evidence, including evidence that was the subject of the Bureau's request for judicial notice. This prompted the following colloquy:

"MS. CARTER [counsel for Gabriela]: Your Honor, if I didn't make this clear earlier, I'm not objecting to the court taking judicial notice of the Court orders that were provided in the packet. For jurisdictional purposes, I'm objecting to the reports, the Court taking judicial notice of those reports.

"THE COURT: Well, judicial notice doesn't go to the content but rather the findings and rulings and action taken.

"MS. CARTER: If it's limited to that, that's fine.

"THE COURT: Yes.

"MS. FREY [county counsel]: For jurisdiction purposes.

"THE COURT: Yes. I think that is a correct legal statement in terms of what judicial notice permits."

In light of the court's ruling, Gabriela's counsel argued the Bureau had "not proven that mother failed to successfully reunify with the siblings. The Court order simply states that jurisdiction was terminated in those cases and that the children were— that a custody order was granted for father. It says nothing about terminating mother's

---

reasons not evident in the record, at a July 13 pretrial hearing, the court granted Gabriela's request to have the prior jurisdictional findings set aside.

services, whether it was successful, unsuccessful, partial or anything else. So I believe based on that, the County cannot make their case on jurisdiction."

The court disagreed, finding it "clear to the Court based on the Court's rulings in Los Angeles, that mother did indeed fail to reunify and the children were placed with father, not once, but I believe twice. . . . And it was based on her failure to participate in services directed to the issue that presented itself in this case, which is mother's extensive and rather extraordinary mental health concerns that have not been properly addressed by mother either before, during or after those dependency proceedings." It thus sustained the allegations.

The hearing then turned to the question of disposition, specifically, whether section 361.5, subdivision (b)(10) mandated that the court bypass reunification services. Gabriela's counsel argued that the provision did not apply because the Bureau had not proven that Gabriela failed to successfully reunify with Abigail's half siblings, the first requirement of subdivision (b)(10). She reiterated her position that the January 23, 2015 order merely stated that jurisdiction was terminated and the father was granted custody, saying nothing about terminating Gabriela's services. The court rejected this "clever" but "not very persuasive" argument, stating: "It's clear that by Court's action, reunification services were terminated and mother failed to reunify."

The court then addressed whether Gabriela had made reasonable efforts to treat the problems that led to the removal of Abigail's half siblings:

"In mother's history she has extraordinary and extensive mental health issues that have never been addressed. And when I see the letter here that's been provided on her behalf that's dated July 20th from a social worker, mother first presented herself on June 2nd for a biopsychosocial assessment. It doesn't even come close to reasonable efforts to overcome the issues in the underlying proceedings and the same issues that present themselves in this case. And what is troubling as pointed out is that mother continues—it's somewhat of a sad thing—about [*sic*] mental health issues.

"Unfortunately, mother's issues have been so untreated and unaddressed that she continues to exist in that state of denial and that state of failure to recognize her troubling

9

mental health issues and struggles that places an infant child at extraordinary risk of harm, just extraordinary.

"And, thankfully, the law is such that you don't have to wait until that day that that harm is actually—the child is physically harmed before there can be intervention. The law is designed where there is that substantial risk to intervene so you don't have to allow catastrophe to actually occur.

"I'm sure that mother loves her child very, very much[.] I believe she loved her other three children and continues to love them very much. But those children report [a] really frightening living situation with mom and mother's behavior. To this day, mom does not understand the depths of that fear that was instilled and the origin of that fear that the child suffered as a result of mom's untreated, unaddressed significant mental health issues."

Having found the elements of section 361.5, subdivision (b)(10) satisfied, the court lastly turned to the question of whether there existed clear and convincing evidence that reunification was in Abigail's best interest, finding there was not:

"I cannot find—there's not evidence before me to make a finding by clear and convincing evidence that reunification is in the best interest of this child. Quite frankly, to the contrary, I find that it's not in the best interest of this child to put this child through what the half siblings have been through. In and out of foster care repeatedly is not conducive to success and stability that is so desperately needed by children."

With that, the court ordered that services be bypassed as to Gabriela, and it set a section 366.26 permanency hearing for December 14, 2015.

Gabriela filed a timely notice of intent to file a petition for extraordinary writ pursuant to California Rules of Court, rule 8.450, followed by a timely petition under rule 8.452.

## DISCUSSION

**The Court's Findings and Order Were Supported by Substantial Evidence**

Typically, when a dependent child is removed from his or her parent's custody, the juvenile court orders that services be provided to the family in order to facilitate its

10

reunification. (Welf. & Inst. Code, § 361.5, subd. (a); *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478.) However, reunification services need not be offered under certain circumstances specified by statute. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 739.) One such circumstance, as set forth in section 361.5, subdivision (b)(10), is when "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian."

It has been said that the applicability of this bypass provision calls for a two-prong analysis: (1) were reunification services terminated as to a sibling or half sibling; and (2) has the parent subsequently failed to make reasonable efforts to treat the problems that led to the removal of the sibling or half sibling? (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96 (*Cheryl P.*); but see *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 194 [using a four-part analysis].) Gabriela challenges the court's findings on both prongs, which findings we review for substantial evidence. (*Cheryl P., supra,* 139 Cal.App.4th at p. 96.)

As to the first prong—that reunification services were terminated as to a sibling or half sibling—Gabriela contends her three older children "were merely placed in the custody of their father, who had separated from [her]. [She] did not have her parental rights terminated, there was no guardianship ordered, and no long term foster care/planned permanent living arrangement. The half-siblings are merely living with their father." This argument is unpersuasive.

On January 23, 2015—less than two months before the petition was filed in this case—the Los Angeles County Juvenile Court granted custody of Gabriela's three older children to their father and terminated the dependency proceeding. The clear import of

11

that order was that Gabriela's reunification services had been terminated because she had not reunified with her children. Further, the petition here alleged that reunification services were terminated in a prior dependency case when Gabriela failed to reunify with her older children who were removed from her care due to untreated medical problems. The court found this allegation to be true. And section 361.5, subdivision (b)(10) merely requires the prior termination of services for failure to reunify, not the termination of parental rights, as Gabriela seems to suggest. The record likewise established that Gabriela's reunification services were terminated in the 2006 proceeding. In light of this, we easily conclude substantial evidence supported the court's finding that reunification services were terminated as to Abigail's half siblings.

As to the second prong of the analysis, Gabriela claims that the record "is replete with uncontradicted evidence" of her efforts to remedy the problems that led to removal of her older children. In support, she cites only her "consistent attendance and active engagement . . . with therapist Anneka Citrin," who reported that Gabriela "attends sessions consistently, with positive engagement and motivation for treatment . . . ." This, according to Gabriela, "vitiates" the applicability of section 361.5, subdivision (b)(10). We conclude that the court's finding to the contrary is supported by substantial evidence.

As courts have recognized, "reasonable efforts" are not synonymous with "any efforts." The court in *R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914, explained, "We do not read the 'reasonable effort' language in the bypass provisions to mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness." By using the term "reasonable," the Legislature intended "to ensure that lackadaisical or half-hearted efforts would not be deemed adequate . . . ." (*Cheryl P., supra,* 139 Cal.App.4th at p. 99.) These considerations do not favor Gabriela.

12

The dependency proceeding that culminated in Gabriela's loss of custody of her older children commenced in February 2014. There is no indication she sought any treatment for her mental health issues until her June 2, 2015 appointment with Citrin—five months after she lost custody of her older children and when disposition was looming in this case. By the time of Citrin's July 20 letter, Gabriela had attended at most seven appointments. And while Citrin described Gabriela as engaged and motivated, she also advised that Gabriela still denied any history of mental health issues. Gabriela presented no evidence at the disposition hearing—more than a month after Citrin's letter—that she had made any further progress or had yet acknowledged her history of mental illness. Given the dearth of *any* other evidence that Gabriela made efforts to address her mental health problems, and given the duration, extent, and context of the minimal effort she did make, we conclude the juvenile court's finding that she failed to make reasonable efforts to alleviate the problems that led to the removal of her three older children was supported by substantial evidence.

**The Court Did Not Abuse Its Discretion in Taking Judicial Notice of Documents from the Prior Dependency Proceedings**

Gabriela's final argument concerns the Bureau's requests for judicial notice of the case files of the prior dependency proceedings, and the court's ruling on the requests. As Gabriela frames it, at the disposition hearing, she objected to the requests, "stating that the court could only properly take judicial notice of the findings and orders made by the Superior Court in those actions—not the social worker's reports and memorandums which were rife with inadmissible hearsay evidence." She then goes on to argue that "[t]he juvenile court overruled the objection by mother's counsel, and explicitly relied upon unverified, [*sic*] hearsay, and double hearsay evidence from past proceedings from a distant jurisdiction which precluded any cross-examination of hearsay declarants whose statements the juvenile court expressly read, considered, and relied upon in the instant case." This, she submits, deprived her of her due process right to confront the witnesses against her, creating harmful error that requires reversal of the order setting the section 366.26 hearing. Her argument lacks merit.

13

A court may, in its discretion, take judicial notice of any records of any court of any state.  (Evid. Code, § 452, subd. (d).)  The records that were the subject of the Bureau's judicial notice requests were all court records.  The court thus did not abuse its discretion in taking judicial notice of the dependency records.

Beyond that, Gabriela's assertion that the court relied on hearsay is belied by the record.  Upon objection of Gabriela's counsel, the juvenile court confirmed that for purposes of jurisdiction, it was only considering the "findings and rulings and action taken."  Counsel for Gabriela agreed with the court's ruling—"that's fine"—as did counsel for the Bureau.  Gabriela's assertion that the court improperly considered extraneous material for purposes of rendering its jurisdictional findings is thus directly contradicted by the court's express statement.  And she cites nothing else in the record indicating that the court relied on the case files for anything other than that limited purpose.

## DISPOSITION

The petition of mother Gabriela M. for extraordinary writ relief is denied on its merits.  The decision is final as to this court forthwith.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.

A146041; *G.M. v. Superior Court*

15