[No. C069345. Third Dist. Jan. 11, 2012.]

R.T., Petitioner, v.
THE SUPERIOR COURT OF SHASTA COUNTY, Respondent;
SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY et al.,
Real Parties in Interest.

**COUNSEL**

Law Office of Rodney E. Benson and Rodney E. Benson for Petitioner.

No appearance for Respondent.

Rubin E. Cruse, County Counsel, David Yorton and Jennifer Tescher, Deputy County Counsel, for Real Party in Interest Shasta County Health and Human Services Agency.

Richard M. Bay for Real Party in Interest Minor H.T.

Manuel J. Garcia for Real Party in Interest Father H.T.

**OPINION**

**DUARTE, J.**—In this extraordinary writ proceeding, we answer the question of whether petitioner's effort to treat her chronic substance abuse problems constituted a "reasonable effort" such that the bypass provisions of Welfare and Institutions Code[1] section 361.5, subdivision (b)(10) and (11), were rendered inapplicable to her in evaluating her child's case.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

As we will explain, we hold that substantial evidence supports the juvenile court's finding that petitioner's efforts were not "reasonable" as required to avoid application of the relevant statutory provisions. Accordingly, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Shasta County Health and Human Services Agency (the Agency) filed a dependency petition pursuant to section 300 in July 2011, regarding minor, then three and a half years old. Minor's father, H.T. (father), had been arrested for domestic violence and child endangerment; the parents had been living in a tent at a " 'homeless' camp," and father's arrest resulted when he reportedly cut up the tent with a box cutter and threatened to kill minor's mother, R.T. (mother), after seeing her in a " 'sexual position' " with another person.

According to the petition, mother admitted that she and father had used methamphetamine the night before minor's removal and that they had consumed alcohol that same day. Mother asserted that father's violent behavior toward her had "escalated." The petition alleged that the homeless camp was "littered with garbage and had no toilet facilities" and that the parents had barely any food and no resources to obtain food despite having received $490 in cash and $421 in food stamps within the preceding six days.

The petition further alleged that, in 2006, the parents failed to reunify with minor's sibling P.T., whose removal in 2005 was based on the parents' substance abuse and "chronic homelessness," and that minor himself had been the subject of a previous dependency case from late February through November of 2009.

The petition indicated that mother, who turned 26 in August 2011, had used illegal drugs since age 11, beginning with marijuana and progressing to methamphetamine by age 16. The jurisdiction report further chronicled mother's extensive substance abuse history. Mother had tested positive for methamphetamine twice while pregnant with P.T. in 2004, and had relapsed twice during P.T.'s dependency proceedings, which were initiated in 2005. The parents participated only marginally in reunification services in P.T.'s case, and their parental rights were terminated in 2006.

Minor was born in late 2007, and in July 2008, it was "discovered that crack cocaine was being smoked in the house with [minor] present." By September of 2008, father was in jail, and mother reported crack cocaine use

by both parents. The parents were provided voluntary services and mother completed a drug program, the details and duration of which are not clear from the record.

In February 2009, when minor was 15 months old, he was placed in protective custody because the parents were living under a bridge and were not providing minor with adequate food and shelter. According to the social worker, this situation stemmed, in part, from the parents' use of drugs and alcohol. The parents secured housing and participated in services, and minor was returned to them later that year.

In December 2010, during an investigation of a domestic violence incident where father allegedly punched mother in the face, mother admitted she had "relapsed" four months earlier but maintained she "was clean since then, although still smoking THC."

In April 2011, a referral was received alleging "[e]motional [a]buse." Father reported that he and mother "were both smoking methamphetamine" and mother had gone to a women's shelter. He claimed mother was "using" and he was concerned for the welfare of minor.

Following minor's removal in July 2011, minor was "very verbal regarding the domestic violence issues between his parents and other members of his family."

According to an addendum report in September 2011, approximately two months after minor's removal, mother was living in a safe residence and was "actively trying to separate herself from" father—she reported not seeing or speaking to him for "over three weeks." She was on time for visits with minor and was following the recommendations from her mental health assessment. She also claimed she had started a perinatal drug program and was attending 12-step meetings, although she had not provided documentation of her participation in these programs.

Notwithstanding mother's recent efforts, the social worker recommended that reunification services not be provided to her or father under section 361.5, subdivision (b)(10) and (11).[2] The social worker cited mother's continued substance abuse despite two prior dependency proceedings and her unsuccessful participation in three treatment programs.

---

[2] Section 361.5, subdivision (b)(10), instructs that reunification services need not be provided to a parent when the juvenile court finds by clear and convincing evidence that "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 . . . and

At the disposition hearing, mother's attorney made an offer of proof that mother would testify as follows: (1) after her parental rights to P.T. were terminated, she started but did not complete a perinatal program; (2) she completed a six-month program in 2009 and remained clean for one year; and, (3) after minor's most recent removal, she began a program at "Trinity House" involving 16 meetings per month, signed up for a parenting class, attended "a few" 12-step meetings, and was waiting for a "bed" to become available at a program called "Teen Challenge." The court and county counsel noted the absence of *any* progress reports regarding mother's participation in *any* program, as had the social worker's report.

Mother's attorney argued that mother's attempts to address her substance abuse and her ability to remain clean for a period of time were evidence that she had made a reasonable effort to treat the problems leading to P.T.'s removal as required to avoid application of the bypass provisions at issue.

The juvenile court sustained the allegations in the petition and adopted the dispositional findings and orders recommended by the social worker, including a finding that, subsequent to the termination of reunification services and parental rights in P.T.'s case, the parents had not made a reasonable effort to treat the problems that led to removal of P.T.

## DISCUSSION

Mother contends there was insufficient evidence to support the juvenile court's finding that she failed to make a reasonable effort to treat the problems that led to removal of minor's sibling P.T.[3] We disagree.

that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian."

Section 361.5, subdivision (b)(11), instructs that reunification services need not be provided to a parent when the juvenile court finds by clear and convincing evidence that "the parental rights of a parent over any sibling or half sibling of the child had been permanently severed . . . and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent."

[3] Mother also argues the juvenile court abused its discretion in denying services in reference to "subpart (c)" of section 361.5, subdivision (b)(10) and (11). Neither subdivision (b)(10) nor (b)(11) contain a "subpart (c)." We therefore interpret "subpart (c)" to reference *subdivision (c) of section 361.5*, which provides in part: "The court shall not order reunification for a parent or guardian described in paragraph (3), (4), (6), (7), (8), (9), (10), (11), (12), (13), (14), or (15) of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." This subdivision becomes relevant *only if* one of the enumerated bases for denying reunification services applies *and* the juvenile court contemplates exercising its discretion to order services regardless. If the court contemplates ordering services, section 361.5, subdivision (c), requires that the court first find that reunification is in the best interest

■ Ordinarily, when a child is removed from parental custody, the juvenile court must order services to facilitate the reunification of the family. (§ 361.5, subd. (a).) " 'Nevertheless, as evidenced by section 361.5, subdivision (b), the Legislature recognizes that it may be fruitless to provide reunification services under certain circumstances. [Citation.] Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources.' " (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [110 Cal.Rptr.2d 828, 28 P.3d 876].) An order denying reunification services is reviewed for substantial evidence. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96 [42 Cal.Rptr.3d 504].)

■ Section 361.5, subdivision (b)(10) and (11), authorize the denial of services to a parent who has failed to reunify with another child or whose parental rights to another child were terminated if the court finds that the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . ."

The reasonable effort requirement focuses on the extent of a parent's efforts, not whether he or she has attained "a certain level of progress." (*Cheryl P. v. Superior Court, supra*, 139 Cal.App.4th at p. 99.) "To be reasonable, the parent's efforts must be more than 'lackadaisical or half-hearted.' " (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393 [107 Cal.Rptr.3d 103], quoting *Cheryl P.*, at p. 99.) However, "[t]he 'reasonable effort to treat' standard 'is not synonymous with "cure." ' " (*K.C.*, at p. 1393.)

■ We do not read the "reasonable effort" language in the bypass provisions to mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made.

---

of the child, as outlined above. Here, the juvenile court was not required to make a finding under subdivision (c), given its decision not to order services, and consequently it made no such finding. We shall therefore disregard the portions of mother's petition that erroneously reference subdivision (c).

Simply stated, although success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable.

Here, mother's parental rights to minor's sibling P.T. were terminated in 2006, after mother only marginally participated in services and suffered multiple relapses. The only evidence that mother made *any* effort to address her substance abuse during the ensuing two years was her offer of proof that she participated in, but did not complete, a perinatal program for an unspecified period of time. That mother's substance abuse problem persisted is evidenced by her admission in 2008 that she was using crack cocaine. Although she reportedly completed a drug program thereafter, by early 2009, the parents were living under a bridge with minor with no means of obtaining food, in part as a result of their drug and alcohol abuse.

Minor was returned to the parents' custody in May 2009, and dependency jurisdiction was dismissed in November of that year, indicating a period of months during which the parents may have had their substance abuse under control. However, mother subsequently admitted additional drug use beginning in approximately August of 2010, and in April 2011, father reported both parents were using methamphetamine. There is *no* evidence that mother made *any* effort to address her substance abuse issues after minor was returned to her, until minor was once again removed and bypass was recommended. By then, mother had been using drugs again for nearly a year, if not longer, and minor was once again languishing without proper care as a result. There is no evidence in the record that mother, in the month or two of services following minor's second removal, had engaged in these services in any meaningful way. (See *K.C. v. Superior Court, supra,* 182 Cal.App.4th at p. 1393.) In any event, the juvenile court properly could conclude this recent effort, even assuming the effort were substantiated, was simply too little, too late. (See *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 601 [110 Cal.Rptr.2d 679].)

■ At the time of minor's second removal in July 2011, the parents were using the few resources they had to support their substance abuse needs, at the expense of minor's needs. This is precisely the same situation that led to P.T.'s removal and subsequent termination of parental rights.

Viewing this history in its totality, we conclude there is substantial evidence to support the juvenile court's finding regarding lack of subsequent reasonable effort. Accordingly, mother was properly denied reunification services pursuant to section 361.5, subdivision (b)(10) and (11).

## DISPOSITION

The petition for extraordinary writ is denied.

Blease, Acting P. J., and Hull, J., concurred.