Filed 6/11/21  In re B.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re B.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E075825 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J281951, J281952 & J281953) |
| v. | OPINION |
| R.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Pamela J. Walls, Special Counsel, for Plaintiff and Respondent.

1

## INTRODUCTION

Defendant and appellant R.M. (father) challenges the juvenile court's order denying him reunification services pursuant to Welfare and Institutions Code[1] section 361.5, subdivision (b)(13). He contends the court made a mistake of law when it considered his failure to participate in voluntary enhancement services provided after the filing of the dependency petition as the requisite court-ordered services under section 361.5, subdivision (b)(13). He also argues his equal protection rights were violated in denying him services. We affirm.

## PROCEDURAL BACKGROUND

On August 6, 2019, the San Bernardino County Children and Family Services (CFS) filed a section 300 petition on behalf of B.M., R.M., and K.M. (the children).[2] B.M. was three months old, R.M. was 17 months old, and K.M. was nine years old at the time. The petition alleged that the children came within section 300, subdivisions (b) and (d). Specifically, it alleged that father struggled with substance abuse, had a history of engaging in inappropriate sexual contact with a four-year-old child, was currently under criminal investigation for possession of child pornography, and failed to protect the children since they were exposed to domestic violence in the home. The petition also

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

[2] CFS filed a separate petition on behalf of each child. Since the petitions contain the same allegations, we will refer to them collectively as one petition.

2

alleged that the children's mother, V.J. (mother),[3] knew or reasonably should have known that father struggled with substance abuse and failed to protect the children from being exposed to domestic violence in the home.

The court held a hearing on August 7, 2019, found that a prima facie case had been established, and ordered the children detained from father. The court allowed the children to remain in mother's custody on the condition that father not reside in the home or have contact with the children outside of county agency supervision.[4]

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on August 23, 2019, recommending that the court sustain the petition and provide mother with family maintenance services and father with reunification services. The social worker interviewed father. He admitted using methamphetamine and stated that he was using drugs two to three times a week. The social worker expressed her concern with father having access to child pornography and young children, including his own daughters, and stated that he appeared to be in denial about his child pornography problem. However, he did have insight about his drug use and the role it had in the removal of the children from his care. He said he began using methamphetamine at age nine, and he started

---

[3] Mother is not a party to this appeal.

[4] We note the detention report reflects that the social worker recommended the children to remain with mother on the condition that *mother* not reside in the home. However, this appears to be an error since the recommendation was to remove the children from father's custody.

manufacturing it at age 13. He reported that by age 16, he had 32 juvenile felony charges.

The social worker attached a case plan for father, which required him to participate in a domestic violence program and counseling, complete a parenting education program and an anger management program, complete an outpatient substance abuse program, and comply with random and/or on-demand substance abuse testing.

The court held a jurisdiction/disposition hearing on August 28, 2019. The parties agreed to amend father's case plan to include addressing anger management in his counseling, rather than as a separate requirement. The court found that the children came within section 300, subdivisions (b) and (d), and declared them dependents. It adopted the recommended findings and orders, approved the case plan, and ordered mother to participate in family maintenance services and father to participate in reunification services.

*Section 364 Status Review*

The social worker filed a status review report on February 20, 2020, recommending that the children remain in mother's home and the dependency be continued. The social worker reported that prior to December 2019, father was not in contact with CFS. He did not follow through with service referrals or arranged appointments for substance abuse treatment, counseling, domestic violence, and parenting education. Since December 2019, father had been in communication with CFS and was referred again for all services. The social worker specifically reported that he was referred for substance abuse services at Inland Valley Recovery Services (IVRS) on

4

August 23, 2019, with a start date of September 6, 2019. However, he did not follow through with any treatment services. He was again referred on January 7, 2020, with services to begin on January 13, 2020. The social worker requested, but did not receive, an update from IVRS on his attendance and participation in outpatient services.

Father was also referred to Youth Hope Agency for a domestic violence program, a parenting education program, and counseling with a start date of September 30, 2019. However, he failed to follow through with the services. He was then referred for services with Asante Family Services to begin in February 2020. He attended on February 3, 2020, but failed to show up on February 10, 2020.

The social worker further reported that father signed an acknowledgment that the court ordered him to randomly drug test through the color code system in October 2019. On December 19, 2019, he admitted to the social worker that he had not been calling in to the color code system, and he was still using methamphetamine. During that reporting period, he had been called to test eight times, and he was a "no show" each time.

The social worker also reported that father had been staying with various individuals, sleeping on the streets, and staying in motels; however, she was concerned that he may have been living with mother and the children.

The social worker opined that a substantial risk of detriment remained if the children were returned to father's care due to his noncompliance with drug testing, substance abuse treatment, domestic violence classes, and counseling. The social worker stated that although he had made minimal progress during that reporting period, he had begun services and was cooperative with CFS; thus, she recommended he continue the

5

court-ordered services. The social worker also updated the case plan to add the requirement that father attend a 12-step program.

The court held a review hearing on February 27, 2020, and adopted the social worker's findings and recommendations and continued the children as dependents.

*Supplemental Section 387 Petition*

The social worker filed a supplemental section 387 petition on August 18, 2020, alleging that mother violated court orders by allowing father into the home, that she refused CFS access to the children, neglected the children's medical care, and kept the home in an unsanitary and hazardous state. The social worker thus recommended that the children be placed in foster care. In a detention report, the social worker reported that father had not completed any of the court-ordered services and only drug tested once in July 2019, at which time he tested positive for methamphetamine. Furthermore, on June 29, 2020, mother admitted that father's visits were occurring in the home, with her parents supervising. Mother had been warned every month by the social worker that he should not be given access to the children without a visit supervisor present, and that he should not be in the home. The social worker recommended that both father and mother (the parents) not receive reunification services.

The court held a detention hearing on August 19, 2020, and found that a prima facie case had been established for removal. The court removed the children from mother's custody and detained them in foster care. The court then continued the matter for a jurisdiction/disposition hearing.

*Jurisdiction/Disposition*

The social worker filed a second jurisdiction/disposition report on September 3, 2020, recommending that the court sustain the section 387 petition and the children be placed in out-of-home care with family reunification services for mother, but no services for father. The social worker reported that the previous disposition had not been effective since mother failed to take adequate measures to protect the children. She allowed father to move back into the home and have unauthorized access to the children, despite the court ordering him to only have supervised visits and not be in her home. She also neglected the children's medical care and had not provided a safe and sanitary home for them.

The social worker reported that she signed the parents up for on-demand testing on August 14, 2020. They missed the drug test even though they were notified that any missed tests would be considered a positive test. The court then ordered on-demand testing, and they missed the test again on August 19, 2020.

The social worker also stated she received a police report dated April 24, 2020, stating that father was arrested for being in possession of a methamphetamine pipe. (Health & Saf. Code, § 11364, subd. (a).) Father told the police he did not use methamphetamine every day, but he had used earlier that day.

The social worker recommended that father be denied reunification services under section 361.5, subdivision (b)(10) and (b)(13), since he failed to participate in the reunification services that were offered to him and failed to demonstrate a lifestyle free from substance abuse. She reported that she had attempted to call both parents and leave

7

voicemails and text messages, but father changed his phone number. The social worker stated that the parents had been evasive and untruthful with CFS.

The court held a jurisdiction/disposition hearing on the section 387 petition on September 9, 2020. The parents failed to appear, but they were represented by counsel. Father's counsel reported that he had talked to father on the day of the detention hearing and informed him of the next court date, but he had not been able to contact him since then. The court sustained the allegations in the section 387 petition and continued the children as dependents. In her report, the social worker recommended that the court bypass father's services under section 361.5, subdivision (b)(10) and (b)(13). However, at the hearing, she asked the court to strike the written allegations under 361.5, subdivision (b)(10) and (b)(13), and just find that services should not be provided to him since he "timed out." After some discussion, the court stated that it could not terminate services because father "timed out" and noted because the children were initially not removed from mother's custody, father had "discretionary services, not statutory services." However, it found that section 361.5, subdivision (b)(13), was an appropriate bypass provision and that it applied here. Thus, the court denied father services finding that he had a history of extensive and chronic use of drugs and had failed or refused to comply with a program of drug treatment described by the case plan on at least two prior occasions, even though the programs identified were available and accessible.

DISCUSSION

Substantial Evidence Supports the Court's Order Denying Father Reunification Services

Father argues that the court made a mistake of law when it applied his failure to participate in voluntary enhancement services that "came into being after the filing of the dependency petition" to the bypass provision under section 361.5, subdivision (b)(13). In other words, he claims that the court ordered enhancement services, not reunification services, and such enhancement services did not qualify under the statute since they were not ordered prior to the filing of the dependency. He further claims they were voluntary in nature and did not constitute the "court-ordered services" required under the statute. Father then contends that it was in the children's best interests to have an opportunity to reunify with both parents since he was the presumed father, mother was offered reunification services, this was the first time the children had come to the juvenile court's attention, and because denying him services "was not in line with legislative purpose and priority of reunification." Father additionally claims that his equal protection rights were violated since he was treated differently from other presumed fathers. We conclude the court properly bypassed his reunification services under section 361.5, subdivision (b)(13).

A. *Standard of Review*

"Ordinarily, when a child is removed from parental custody, the juvenile court must order services to facilitate the reunification of the family. [Citation.] ' "Nevertheless, as evidenced by section 361.5, subdivision (b), the Legislature recognizes that it may be fruitless to provide reunification services under certain

9

circumstances.  [Citation.]  Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." ' [Citation.]  An order denying reunification services is reviewed for substantial evidence." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914 (*R.T.*).)  " 'All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.  Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact.' " (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 600.)

B.  *The Court Properly Applied Section 361.5, Subdivision (b)(13)*

Section 361.5, subdivision (b)(13), authorizes a juvenile court to deny services to a parent when he "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention, *or* has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible." (§ 361.5, subd. (b)(13), italics added.)  Section 361.5, subdivision (b)(13), " 'reflect[s] a legislative determination that an attempt to facilitate reunification between a parent and child generally is not in the minor's best interests when the parent is shown to be a chronic abuser of drugs who has resisted prior treatment for drug abuse.' [Citation.]  Experience tells us that such a parent

10

has a high risk of reabuse. [Citation.] This risk places the parent's interest in reunifying with her child directly at odds with the child's compelling right to a 'placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' " (*In re William B.* (2008) 163 Cal.App.4th 1220, 1228.)

Father does not dispute that he has a history of extensive, abusive, and chronic use of drugs as specified by section 361.5, subdivision (b)(13). Instead, he argues the court erred in applying the subdivision here since there is no evidence he resisted court-ordered treatment during a three-year period immediately prior to the filing of the petition. However, section 361.5, subdivision (b)(13), may be satisfied by showing *either* resistance to court-ordered treatment during the three years prior to the filing of the petition *or* failure or refusal to comply with a program of drug treatment described in the case plan required by section 358.1. (§ 361.5, subd. (b)(13).) Section 358.1 lists the information that should be in the social study required by section 358 and requires a social worker's report to discuss "[w]hat plan, if any, for return of the child to his or her parents and for achieving legal permanence for the child if efforts to reunify fail, is recommended to the court by the county welfare department or probation officer." (§ 358.1, subd. (b).) This subdivision refers to return of the child and the options that may exist for permanency if reunification efforts fail. Since the plan referred to in section 358.1 is a reunification plan, the second prong of section 361.5, subdivision

11

(b)(13), permits a bypass of services when a parent fails to comply with services offered as a part of a reunification plan on at least two occasions.[5]

Here, the court bypassed father's services under the second prong of section 361.5, subdivision (b)(13), not both prongs, as father discusses extensively. The court specifically found that he "failed or refused to comply with a program of drug [] treatment described by the Case Plan on at least two prior occasions, even though the programs identified were available and accessible." The record shows that the court approved the case plan and ordered father to participate in reunification services at the original jurisdiction/disposition hearing on August 28, 2019. His initial case plan included the requirements that he complete an outpatient substance abuse program and comply with random and/or on-demand substance abuse testing. At the section 364 status review hearing, the court found Father had failed to participate in his reunification services and had made minimal progress. Father conceded he was still using methamphetamine and all eight of his random drug tests were "no-shows." Father did not follow-through with substance abuse treatment, a domestic abuse program, parenting education or individual therapy. Father did claim to have signed up for a 12-step program; however, he provided no evidence of signed 12-step attendance cards. The

---

**5** We note father's claim that "two prior occasions" means two prior dependency cases. However, the language of the statute only says the parent must have "failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least *two prior occasions*." (§ 361.5, subd. (b)(13), italics added.) It says nothing about two prior dependency cases.

12

juvenile court approved and ordered a second "updated" case plan (adding the 12-step program for substance abuse).

Later, at the hearing on the section 387 petition, the court found Father's progress with reunification services had "been absent." Thus, the evidence clearly shows that on two separate occasions father failed to comply with the reunification services requiring substance abuse treatment ordered by the court as required by section 361.5, subdivision (b)(13). He was referred for substance abuse services on August 23, 2019, but he did not follow through with any treatment services. Furthermore, although he was ordered to randomly drug test through the color code system, he admitted to the social worker that he was not calling in to the color code system and was still using methamphetamine. He was scheduled to test eight times and failed to appear each time. As of September 9, 2020, the social worker reported that father still had not completed any services, and he only drug tested once in July 2019, when he tested positive for methamphetamine. Therefore, the evidence was sufficient to support the court's bypass of father's services under section 361.5, subdivision (b)(13).

Father claims that the court bypassed his reunification services under section 361.5, subdivision (b)(13), "without giving any reasonable explanation or grounds" for finding the statute applicable. However, at the hearing, the court stated that it initially "scratched out" the finding (written in the social worker's report) that father "has a history of extensive, abusive, and chronic use of drugs or alcohol; has failed or refused to comply with a program of drug [] treatment described by the Case Plan on at least two prior occasions, even though the programs identified were available and accessible."

13

However, the court said, ". . . but I reinstated it, and I'm making that (b)13 finding. I did it orally, and [I'm] also initialing it indicating that [it] does apply." It then expressly adopted the social worker's recommended findings and orders.

Father also claims the court found he was only offered discretionary enhancement services, and such services did not qualify under section 361.5, subdivision (b)(13), since they were not ordered prior to the filing of the dependency petition, and they were voluntary in nature. However, his argument is mistakenly referring to the first prong of the subdivision, which states that the parent has to have "resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition." (§ 361.5, subd. (b)(13).) As discussed *ante*, the court did not rely on that prong of the subdivision in denying father services. Although it is unclear what the court meant when it said father had "discretionary services, not statutory services," it properly bypassed father's reunification services pursuant to the second prong of section 361.5, subdivision (b)(13). (See *ante*.) Moreover, contrary to father's characterization that the services ordered were discretionary enhancement services, the record demonstrates that the court ordered him to participate in reunification services.

C. *Father Has Not Shown It Was in the Children's Best Interests to Order Reunification Services*

Father argues that it was in the children's best interests to have an opportunity to reunify with both of their parents, noting that the court ordered reunification services for mother. He asserts that he was a presumed father, he and mother wanted to remain a married couple, and to deny him reunification services was "not in line with" the

14

legislative priority of reunification. Father has not shown that it was in the children's best interests to order reunification services for him.

Section 361.5, subdivision (c)(2), provides that the court shall not order reunification for a parent described in subdivision (b)(13) "unless [it] finds, by clear and convincing evidence, that reunification is in the best interest of the child." None of the reasons listed by father establish that it was in the children's best interests to reunify with him. Once the court determined that section 361.5, subdivision (b)(13), applied, " ' "the general rule favoring reunification [was] replaced by a legislative assumption that offering services would be an unwise use of governmental resources." ' " (*R.T.*, *supra*, 202 Cal.App.4th at p. 914.) In view of the fact that father was already provided with referrals for services and failed to participate in or complete any of the programs, offering more services to him would certainly be an unwise use of governmental resources.

D. *Father Has Not Established a Violation of Equal Protection Rights*

Father claims that "for the same reasons argued above," his equal protection rights under the federal and state Constitutions were violated. He argues that he is similarly situated to other presumed fathers who are entitled to reunification services and essentially claims that his equal protection rights were violated "by the [court's] mistaken application of the law." Father's contention that the court misapplied section 361.5, subdivision (b)(13), to his case is without merit, thus, invalidating his equal protection claim. (See § B., *ante*.)

Ultimately, the court properly applied section 361.5, subdivision (b)(13), here and there was sufficient evidence to support its decision to bypass father's services.

15

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                             J.

We concur:

CODRINGTON _____
                Acting P. J.

SLOUGH _____
                   J.