Filed 1/30/25  In re I.R. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re I.R., a Person Coming Under the Juvenile Court Law. | B334599 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERTO R.,<br><br>    Defendant and Appellant. | Los Angeles County<br>Super. Ct. No. 17LJJP00229C |

APPEAL from order of the Superior Court of Los Angeles County.  Donald A. Buddle, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

Father Roberto R. appeals the juvenile court's decision to deny him services to reunify with minor I.R., pursuant to section 361.5, subdivision (b)(10) of the Welfare and Institutions Code.[1]  Because substantial evidence supports the court's decision, we affirm.

## BACKGROUND

Father shares I.R. (born 2015), with mother, D.T.  Mother is not a party to this appeal.  Father has another daughter, D.R. (born 2003), with a different mother.

D.R. was the subject of prior dependency proceedings. Those began in 2008, after father and D.R.'s mother were arrested for possession of methamphetamine and drug paraphernalia.  The juvenile court determined father used methamphetamine and had a history of drug abuse and arrests. It removed D.R. from father and ordered reunification services. Father failed to reunify with D.R.  The court ordered legal guardianship for D.R. and appointed paternal grandmother her guardian.

I.R. was also the subject of prior dependency proceedings. Those began in 2016, when I.R. was a newborn, based on mother's history of alcohol abuse.  Before I.R. was born, mother had crashed her car into a wall of a McDonald's while drunk after leaving three of I.R.'s half siblings at the restaurant's play area. There were no allegations against father.  The juvenile court removed I.R. from mother and ordered her released to father with family maintenance services.  The case terminated in 2017 with a family law order granting father sole legal and physical custody of I.R. and monitored visitation for mother.  Father allowed

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

mother extensive unmonitored visitation with I.R. even though he knew mother had unresolved substance abuse issues. Mother absconded with I.R. in the summer of 2019, when, according to father, she said she was taking I.R. to a party. Father did not report I.R. missing until that October.

The current proceedings for I.R. began in November 2020 when I.R. was four years old. The Los Angeles County Department of Children and Family Services (Department) had received a referral that mother was " 'on the run' " with I.R., even though father was supposed to have custody. A month before the referral, father had been arrested for felony domestic violence. At the time of his arrest, he was found with drug paraphernalia and a firearm. He was later convicted of a domestic violence offense and possession of a firearm by a prohibited person and sentenced to probation.

The Department alleged in the petition that, among other things, father had engaged in domestic violence with his female companion; he had a history of substance abuse and was abusing alcohol; D.R. had been ordered into guardianship due to father's substance abuse; and father had a history of criminal convictions relating to possession and sale of drugs and was a registered controlled substance abuser. Additional allegations against mother addressed her alcohol abuse and juvenile court history for I.R.'s half siblings. I.R.'s whereabouts were unknown at the time but she was believed to be in mother's custody. The juvenile court ordered I.R. detained and issued a protective custody warrant for her. She was not brought into protective custody until May 2023 when she was taken from mother during a traffic stop.

3

During the more than two years the Department spent looking for I.R., father completed some services. He claimed to have completed a full year inpatient drug treatment program, but his completion letter said he attended only six months. He also claimed to be completing an alcohol treatment program, but he was terminated from that program. Despite claiming to be sober in May 2023, he tested positive for methamphetamines and amphetamines in June 2023.

In August 2023, the Department filed the operative second amended section 300 petition. It alleged, among other things, that father endangered I.R. through his domestic violence, drug abuse, and related criminal history. He had recently again been arrested for a domestic violence incident that occurred earlier the same month.

The juvenile court sustained the allegations against father, removed I.R. from him, and denied him further reunification services. In doing so, the court explained "during the proceedings of this case, father has . . . continued in behaviors that brought his family before the court . . . ." It found by clear and convincing evidence that the factual predicates of section 361.5, subdivision (b)(10)(A) were met as to father and denied him services on this basis.

Father timely appealed.

## DISCUSSION

Father contends the juvenile court erred in denying him reunification services. We disagree.

## 1. Law and Standard of Review

After a juvenile court orders a child removed, the mother and statutorily presumed father are generally entitled to family reunification services. (§ 361.5, subd. (a).) However, there are several exceptions to this rule. As relevant here, reunification

4

services need not be provided when the court finds, by clear and convincing evidence, "[t]hat the court ordered termination of reunification services for any . . . half siblings of the child because the parent . . . failed to reunify with the . . . half sibling after the . . . half sibling had been removed from that parent . . . and that, according to the findings of the court, this parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the . . . half sibling of that child from that parent . . . ."  (§ 361.5, subd. (b)(10)(A).)

We apply the substantial evidence standard of review to the juvenile court's determination that father was not entitled to reunification services under section 361.5, subdivision (b)(10)(A). (See *R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914 ["An order denying reunification services is reviewed for substantial evidence."].)

2.    **Analysis**

In considering whether to bypass reunification services under section 361.5, subdivision (b)(10)(A), courts must consider whether the subject parent made a "reasonable effort" to address the issues that brought the first child before the juvenile court from the time the first child was removed.  (*In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1274 (*Jayden M.*).)  Whether the parent's effort was reasonable does not depend upon whether the parent solved the problem or even whether the parent achieved a certain degree of progress.  (*Id.* at p. 1276.)  "Instead, the focus is on the parent's *effort.*"  (*Ibid.*)  However, "[i]t is not enough to show 'any' effort, even a genuine one."  (*Ibid.*)  " '[L]ackadaisical or half-hearted efforts' " will not suffice.  (*Ibid.*) "[R]easonableness is assessed by looking to (1) the duration of the parent's effort, (2) the 'extent and context' of the parent's effort,

and (3) other factors related to the 'quality and quantity of those efforts.'" (*Ibid.*) The parent's progress, or lack thereof, bears on the reasonableness of the effort, even though it is not dispositive. (*Ibid.*)

We find substantial evidence supports the juvenile court's conclusion that father did not make reasonable efforts to address his drug problems after D.R.'s removal. First, the record reflects that in D.R.'s 2008 case, father was ordered to test for the Department and undergo a drug treatment plan if he missed tests or returned positive tests. The court terminated services in 2009 for father's noncompliance with his case plan. In the years that followed, father was convicted of numerous drug crimes and was required in 2013 to register as a controlled substance offender.

Father suggests the fact that I.R.'s first case terminated in 2017 with sole custody for father precludes a finding that he made no reasonable efforts to address his substance abuse problems after D.R.'s removal. We disagree. I.R.'s first case focused on mother. Father was a nonoffending parent, and it is not apparent that father was subject to material scrutiny by the Department in that case. As father notes, the record does not reflect what services he received, the quality or extent of his engagement, or how he may have benefited by them.

The record does show, however, that father continued to have issues with substance abuse after I.R.'s first case. When he was arrested in 2020, shortly before I.R.'s second case began, he was found with drug paraphernalia. He also tested positive for alcohol after the initial referral. When he underwent substance abuse services during the case, there is evidence he exaggerated the duration of his inpatient treatment, suggesting he knew the

6

treatment he actually completed was inadequate. He was also terminated from an alcohol treatment program prior to completion. Moreover, father tested positive for amphetamines and methamphetamines shortly before the court decided to bypass services.

We think these facts are sufficiently similar to *Jayden M.*, *supra*, 93 Cal.App.5th 1261 that the outcome must be the same. There, a mother with longstanding substance abuse issues received some services in her case before the juvenile court decided to bypass services pursuant to section 361.5, subdivision (b)(10) and (11). (*Jayden M.,* at p. 1276.) Her efforts to address her issues in the later case were "a commendable start," but spotty attendance and failure to fully participate amounted to substantial evidence that the mother's efforts had not been reasonable. (*Id.* at p. 1277.)

## DISPOSITION

The juvenile court's order is affirmed.


GRIMES, Acting P. J.


WE CONCUR:



WILEY, J.



VIRAMONTES, J.


7