Filed 10/13/25  Jennifer H. v. Superior Court CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JENNIFER H., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA BARBARA COUNTY, <br><br> Respondent, <br><br> SANTA BARBARA COUNTY CHILD WELFARE SERVICES, <br><br> Real Party in Interest. | 2d Juv. No. B347444 <br> (Super. Ct. No. 19JV00064-A) <br> (Santa Barbara County) |

Jennifer H., the mother of six-year-old M.E., seeks extraordinary writ relief from the juvenile court's order denying her reunification services pursuant to Welfare and Institutions

1

Code, section 361.5, subdivisions (b)(10) and (b)(11)[1] and setting the matter for a permanency planning hearing (§ 366.26). Because substantial evidence supports the juvenile court's findings that mother had not made a reasonable effort to overcome the problems that led to the previous termination of reunification services and parental rights to M.E.'s half sibling, S.H., we deny the petition.

*Facts and Procedural Background*

Mother has a long history of untreated mental health issues, which has resulted in multiple involuntary hospital holds and related dependency actions. In March 2025, police responded to a call that mother was manic and hysterical. The reporting party told police that she heard yelling and screaming from mother and M.E. When officers arrived, they saw mother holding M.E. on her lap and clutching her aggressively. Mother was subsequently hospitalized and M.E. was detained.

Santa Barbara County Child Welfare Services (CWS) filed an amended juvenile dependency petition, alleging among other things, mother's longstanding mental health issues and her failure to address those issues, as well as the termination of reunification services and mother's parental rights to S.H. due to mother's untreated mental health issues. CWS recommended mother be bypassed for family reunification services. (§ 361.5, subds. (b)(10), (b)(11).)

In June 2025, the juvenile court conducted a contested disposition hearing. Mother was the sole witness. She testified that when M.E. was detained, she was in "psychosis . . . and having delusional thoughts." Mother stated that when law

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

enforcement arrived, "there was a lapse and break in reality." Mother testified about her "different diagnoses" over the years, and the possibility that her "brain can repair itself."

Mother also testified that her circumstances were different when S.H. was detained in July 2021. For example, she had been homeless, did not have any prenatal care, was suffering from domestic violence, and was incarcerated for most of the six-month reunification period with S.H. Mother also testified that she was now on a more appropriate medication, was engaged in therapy, had been attending a 12-step program, and was testing negative for illegal substances.

On cross-examination, mother admitted a lengthy battle with mental health issues, medication issues, and substance abuse. She also admitted that she was initially uncooperative with CWS.

After listening to testimony and hearing argument, the juvenile court found by clear and convincing evidence that there was a substantial risk of harm if M.E. were to be returned to mother. It also found by the same standard that section 361.5, subdivisions (b)(10) and (b)(11) applied.

As the juvenile court explained, mother had not made "any continuing consistent reasonable efforts" to treat "the very difficult problem" that led to the removal of S.H. This was evidenced by mother's history with the department, her repeated occurrences of mental health crisis, M.E.'s prior detention in 2019, and the need to again detain her for the same reason. The juvenile court also found that it was not in M.E.'s best interests to offer mother services. It therefore ordered reunification services bypassed, adopted the department's recommended findings and orders, and set the permanency planning hearing.

*Discussion*

We review an order denying reunification services for substantial evidence. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.) Under that standard, "we inquire whether the evidence, contradicted or uncontradicted, supports the [juvenile] court's determination. We resolve all conflicts in support of the determination, indulge in all legitimate inferences to uphold the findings and may not substitute our deductions for those of the juvenile court." (*Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 865.)

"Section 361.5, subdivision[s] (b)(10) and (b)(11), authorize the denial of services to a parent who has failed to reunify with another child or whose parental rights to another child were terminated if the court finds that the parent 'has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . .'" (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914 (*R.T.*).)

Mother does not dispute that her parental rights to S.H. were terminated. Rather, she contends that she has made "[r]easonable efforts since the termination of services with [S.H.]" For example, she asserts that she is "taking classes and doing a lot of reflection on how to be a better parent, [and has made] a lot of progress."

Although mother's efforts are commendable, "*any* effort by a parent, even if clearly genuine, to address the problems leading to removal" does not necessarily constitute a reasonable effort. (*R.T.*, *supra*, 202 Cal.App.4th at p. 914.) By the time of the contested hearing in June 2025, mother had only been in treatment since the beginning of May even though M.E. had been detained in March. Mother also acknowledged during her

4

testimony that she told the director of adult treatment services at Project Recovery that she was not necessarily interested in treatment and wanted to "wait to see what happened at the next court hearing."

We conclude substantial evidence supports the juvenile court's determination that mother had not made a reasonable effort to overcome the problems that led to the previous termination of reunification services and parental rights as to S.H.

Substantial evidence also supports the juvenile court's determination that it was not in M.E.'s best interests to offer mother reunification services. (§ 361.5, subd. (c)(2).) This was M.E.'s second detention. At six years old, M.E. had already suffered significant trauma due to mother's untreated mental health issues. For example, M.E. told the social worker that mother would forget to feed her and that she would have to ask "'a lot of times,' for food." M.E. also said that mother talks to herself a lot, hears voices, and sees demons.

On this record, we conclude the juvenile court did not err in denying mother reunification services pursuant to section 361.5, subdivisions (b)(10) and (b)(11).

### Disposition

The petition is denied.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara

_____

J.H., in pro. per, for Petitioner.

No appearance for Respondent.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Snr. Deputy County Counsel, for Real Party in Interest.