Filed 4/13/26  Izabella C. v. Superior Court CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| IZABELLA C., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA BARBARA COUNTY, <br><br> Respondent; <br><br> SANTA BARBARA COUNTY CHILD WELFARE SERVICES, <br><br> Real Party in Interest. | 2d Juv. No. B351659 <br> (Super. Ct. No. 25JV00451) <br> (Santa Barbara County) |

Izabella C., mother of one-year-old L.C., seeks extraordinary writ relief from the juvenile court's order denying her reunification services pursuant to Welfare and Institutions

Code, section 361.5, subdivisions (b)(10) and (b)(11)[1] and setting the matter for a permanency planning hearing (§ 366.26). She also challenges the warrantless detention of L.C. and claims she was denied effective assistance of counsel. We deny the petition.

*Factual and Procedural Background*

On October 16, 2025, mother was pulled over by Lompoc Police Department (LPD) for driving with expired vehicle registration. Mother had an active warrant for violating the terms of her probation and was arrested. LPD allowed mother's male friend, Vincent H., to take 11-month-old L.C. into his care.

The following day, Santa Barbara County Child Welfare Services (CWS or the department) received an immediate response report regarding L.C. According to the report, LPD discovered that Vincent had been arrested four days prior for possession of fentanyl. CWS spoke with probation, who confirmed that Vincent had been arrested for possession of about three grams of fentanyl. Because fentanyl exposure is extremely dangerous for children, CWS determined L.C. was at substantial risk of harm and initiated a search for Vincent to remove L.C. from his care.

When CWS contacted Vincent's mother to inquire about his possible location, she told the social worker that her son could not care for an infant, and it was "stupid" to leave the child with him. Meanwhile, Vincent was actively hiding L.C. from the department. When CWS managed to locate Vincent, he contacted maternal aunt and another woman who showed up and attempted to take L.C. into their custody. The situation was so

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

contentious, that one of the women had to be handcuffed before maternal aunt released the child to CWS.

CWS filed a juvenile dependency petition,[2] alleging among other things, mother's decision to leave the child in the care of an unsafe individual, her history of substance abuse, criminal history, and prior dependency case that resulted in the termination of services and parental rights to L.C.'s half sibling, E.R.  CWS recommended mother be bypassed for family reunification services.  (§ 361.5, subds. (b)(10) & (b)(11).)

CWS prepared a detention report detailing the events leading to L.C.'s detention.  The report also discussed the detention of mother's older child approximately two years prior.  In that case, mother gave birth prematurely to her son, E.R.  When asked to provide a drug test, mother left the hospital against medical advice and did not return.  E.R. tested positive for amphetamines.  Mother was referred to services to treat her substance abuse issues, but failed to follow through.

On October 22, 2025, the juvenile court conducted a detention hearing in the matter of L.C.  After all parties submitted on detention, mother interjected, "I . . . have a question as to why I even have a case open.  The Lompoc Police, they allowed me to release my daughter to the person who I released her to."  The juvenile court replied, "It's alleged the person you released your daughter to is unfit to care for the child."  Mother disagreed.  The juvenile court indicated it did not believe the person was an appropriate caretaker and made findings on that basis.

_____

[2] The department later filed an amended petition to add Carlos O., L.C.'s alleged father.  He is currently incarcerated in prison and declined to participate in the proceedings.

3

In December 2025, the department filed a Jurisdiction/Disposition report, which indicated that mother had been released from jail but was arrested again on November 28, 2025. The report stated that mother was unwilling to communicate with CWS except through email. She also refused to provide releases of information so the department could verify her claims that she was compliant with probation, which differed from the information provided by mother's probation officer.

CWS filed the police reports from mother's latest arrest. According to the reports, mother attempted to run several people over with her vehicle while appearing to be under the influence of alcohol. CWS also filed a request for judicial notice of the prior dependency case involving E.R., which the juvenile court granted.

On January 7, 2026, the juvenile court conducted a contested Jurisdiction/Disposition hearing. Prior to the hearing, mother's counsel informed the court that mother wanted a "Marsden" hearing. The juvenile court conducted a Marsden hearing, denied mother's motion, and resumed the Jurisdiction/Disposition hearing.

Prior to presenting evidence, mother's counsel informed the juvenile court that mother wanted to challenge the initial detention, and that counsel was not prepared to argue that issue. The juvenile court indicated the issue was untimely anyway and the hearing proceeded.

Mother testified that she was currently involved in a drug treatment program at Lompoc Recovery Center. She attended group three times per week, which included two drug and alcohol classes and one parenting class. She was drug testing negative, had one missed test, and attending alcoholics anonymous (A.A.)

4

and narcotics anonymous (N.A.) meetings three times per week. Mother said she was making progress in her recovery program.

Mother also testified about her connection to L.C. and said she would never knowingly put her daughter at risk. She explained that she believed her daughter was safe because the police let her go with Vincent. As to L.C.'s best interests, mother believed L.C. should come home and the department could implement "maintenance" services. Mother did not address her recent arrest except to say that she believed she would be "fully exonerated."

On cross-examination, county counsel asked mother about several missed drug tests based on the testing logs from the treatment facility. Mother initially said she was incarcerated on those dates but later said she was not asked to test on those dates. Mother acknowledged that she did not start attending A.A. and N.A. meetings until after December 8, 2025, when she was released from jail. Mother asserted that if L.C. had been in her care, mother would not have engaged in the conduct leading to her latest arrest.

After hearing argument and considering all the evidence presented, including the department's reports and mother's prior dependency case, the juvenile court found mother had not made reasonable efforts to resolve the issues that led to the prior termination of services and parental rights. The juvenile court sustained the amended petition with a modification, ordered services bypassed for mother, and set the section 366.26 hearing.

*Discussion*

At the outset, we treat mother's proposed exhibits attached to her petition for writ relief. As indicated in the department's answer brief, mother's exhibits were not introduced in the

5

juvenile court and CWS did not have an opportunity to address them.  As a general rule, documents not before the trial court cannot be included as part of the record on appeal and must be disregarded as beyond the scope of appellate review.  (9 Witkin, Cal. Proc. (6th ed. 2026) Appeal, § 354, p. 387.)  We therefore do not consider them.

<em>Denial of Reunification Services</em>

We review an order denying reunification services for substantial evidence.  (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.)  Under that standard, "we inquire whether the evidence, contradicted or uncontradicted, supports the [juvenile] court's determination.  We resolve all conflicts in support of the determination, indulge in all legitimate inferences to uphold the findings and may not substitute our deductions for those of the juvenile court."  (*Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 865.)

"Section 361.5, subdivision[s] (b)(10) and [(b)](11), authorize the denial of services to a parent who has failed to reunify with another child or whose parental rights to another child were terminated if the court finds that the parent 'has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . .'"  (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914 (*R.T.*).)  Once it is determined that a bypass provision applies, the juvenile court is prohibited from ordering reunification services unless it finds, by clear and convincing evidence, that reunification is in the best interest of the child.  (§ 361.5, subd. (c)(2).)

Mother does not dispute that her reunification services and parental rights were terminated as to L.C.'s half sibling, E.R.

6

Rather, she contends that she has made reasonable efforts to address the issues that led to the prior dependency case.

But the record is to the contrary. In March 2023, mother gave birth to E.R. prematurely. Shortly thereafter, E.R. tested positive for amphetamines. In April 2023, E.R. was detained and mother was provided reunification services. As part of her case plan, she was required to participate in substance abuse treatment. After completing inpatient treatment, mother stopped consistently drug testing, had a diluted test, multiple positive tests, and missed tests. She stopped providing proof of her attendance to her 12-step meetings. She was discharged from Family Drug Treatment Court for noncompliance. And by September 2024, mother's services and parental rights to E.R. were terminated.

Just over one year later, L.C. was detained after mother entrusted her child to the care of a man who had been arrested four days prior for possession of nearly three grams of fentanyl. Mother's repeated assertions that L.C. was safe because the police allowed her to go with Vincent illustrates mother's failure to take responsibility for her actions that put her child at risk.

Moreover, during the short period of time between the detention and jurisdiction/disposition hearing, mother was arrested for trying to hit multiple people with her vehicle while apparently under the influence of alcohol. When she was not incarcerated, she missed drug tests and meetings. She was also uncooperative and noncommunicative with the department.

Although mother made "some" effort in her treatment program, the juvenile court found her efforts were "very recent" and "not enough to convince the court that reunification services should not be bypassed."

7

We agree.  Not every effort, even if clearly genuine, will constitute a " 'reasonable effort.' "  (*R.T.*, *supra*, 202 Cal.App.4th at p. 914.)  On this record, substantial evidence supports the juvenile court's findings that mother had not made reasonable efforts to treat the problems that led to the termination of services and parental rights in her prior dependency case.  Substantial evidence also supports the juvenile court's finding that it would not be in L.C.'s best interests to order services.

*Warrantless Detention*

Mother contends that the detention of L.C. without a warrant was unlawful because no exigent circumstances existed at the time of her seizure.  CWS responds that mother waived this contention by failing to raise it at the detention hearing.  It nevertheless addresses the merits of mother's claim because "the transcript reflects some confusion on the subject."

Here, mother was represented by counsel at the detention hearing.  The parties all submitted on detention.  It was only after the juvenile court made its findings that mother raised any issue, asking why she had an open case in the first place.  We agree that mother forfeited this claim by failing to timely raise it.

But even absent forfeiture, mother's contention is meritless.  "Social workers constitutionally may remove a child from the custody of a parent without prior judicial authorization if the information they possess at the time of seizure provides reasonable cause to believe that the child is in imminent danger."  (*M.L. v. Superior Court* (2009) 172 Cal.App.4th 520, 527; see also § 306, subd. (a)(2).)

Mother contends there was no exigency because the police released her child to Vincent after "presumably" running a criminal records check.  But at that time, LPD was not aware

8

that just days prior, Vincent had been arrested for possession of fentanyl. Given the acute risk that fentanyl poses to an infant, and considering Vincent's subsequent actions to keep L.C. from the department, CWS was justified in taking L.C. into temporary custody without a warrant.

Mother cites *In re David M.* (2005) 134 Cal.App.4th 822 for the contention that risk cannot be inferred solely from past conduct without a nexus to a present threat. This contention is meritless. The "past conduct" is Vincent's arrest for fentanyl possession four days prior to his taking sole custody of L.C., and the nexus is the substantial risk of serious harm this posed to an 11-month-old baby.

Mother also contends the department failed to identify maternal aunt as a relative that should have been permitted to take custody of L.C. But the record reflects that while the social worker was waiting outside Vincent's apartment, maternal aunt showed up with another woman, parked her car in the middle of the street, ran into the apartment, and then attempted to put the child in the car seat and leave with her. The situation was so "contentious," that the woman with maternal aunt had to be handcuffed before maternal aunt released L.C. to the social worker. There is nothing to indicate that CWS knew who maternal aunt was at the time. And given these facts, CWS was justified in not leaving L.C. in maternal aunt's custody.

*Ineffective Assistance of Counsel*

Mother contends she was denied effective assistance of counsel because she requested a bonding study to support reunification and counsel declined to pursue this strategy. She also contends counsel did not take her phone calls, discuss

strategy of the case, or adequately prepare her to testify at the contested hearing. These contentions are meritless.

"Where the ineffective assistance concept is applied in dependency proceedings[,] the appellant must" show (1) " 'counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms,' " and (2) there is a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . .' " (*In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1711.)

Mother's first claim fails because a bonding study, although helpful in certain circumstances, is never required. (See *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339-1340.) In any event, given L.C.'s young age, the bond between mother and child is presumed and CWS did not call it into question. But even if counsel had requested a bonding study, mother cannot prove the juvenile court would have granted that request.

Mother's second contention fails because she cannot show prejudice. Mother was able to testify about her bond with L.C., her recent engagement in treatment, and why she believed L.C.'s detention was improper. Nothing in mother's exhibits would have changed the outcome of this case, particularly given her subsequent arrest for possible DUI in the short time between detention and the jurisdiction/disposition hearing.

*Disposition*

The petition is denied.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

11

Gustavo E. Lavayen, Judge
Superior Court County of Santa Barbara

———————————————————

Izabella C., in pro. per., for petitioner.

No appearance for Respondent.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Senior Deputy, for Real Party in Interest.