Filed 3/13/24  In re Jayleen P. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re JAYLEEN P., a Person Coming Under the Juvenile Court Law. | B326771 (Los Angeles County Super. Ct. No. 22CCJP03934) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ADRIANA C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Adriana C. (Mother) appeals from the juvenile court's disposition order denying her family reunification services with respect to 14-year-old Jayleen P. under Welfare and Institutions Code[1] section 361.5, subdivision (b)(10)(A). Mother contends there is not substantial evidence to support the court's finding she failed to make a reasonable effort to address her 20-year-old drug abuse problem that led to the removal of Jayleen's older half siblings, with whom she failed to reunify. Mother also contends the court abused its discretion in finding reunification was not in Jayleen's best interests. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Prior Dependency Proceedings as to Jayleen and Her Half Siblings*

On October 27, 2004 the Los Angeles County Department of Children and Family Services (Department) filed a dependency petition under section 300, subdivisions (a) and (b), on behalf of two of Mother's children, then-nine-year-old Jorge C. and then-

_____

[1]  Further statutory references are to the Welfare and Institutions Code.

2

three-year-old Yazmin C., alleging Mother's drug use.[2]  The juvenile court sustained the petition and removed Jorge and Yazmin from Mother and the children's father, Ramon C.  Mother was granted family reunification services and ordered to attend a drug rehabilitation program with random drug testing, a parent education program, and individual counseling to address case issues.

A year later (on October 28, 2005) the Department filed a dependency petition on behalf of Mother's then-three-month-old daughter Joselyn C. pursuant to section 300, subdivisions (b) and (j).  The juvenile court sustained the petition under subdivision (b) and ordered Joselyn removed from Mother and Ramon, with Mother to receive reunification services.

On May 1, 2006 the juvenile court terminated Mother's reunification services as to Jorge and Yazmin, finding Mother was not in compliance with her case plan.  On August 7 the court likewise terminated reunification services as to Joselyn.  In March 2007 the court appointed the maternal grandmother, Maria R., as the children's legal guardian, and the court subsequently terminated jurisdiction as to the three children.

On May 21, 2008 the Department filed a dependency petition on behalf of then-one-year-old Jeany C. under

---

[2]     The juvenile court's minute orders for the prior dependency proceedings are included in the record on appeal, but the October 2004 petition, subsequent petitions, and other court documents from the prior dependency proceedings are not.  Although the factual allegations are not set forth in the minute orders, the parties do not dispute that jurisdiction over the children was based on Mother's drug use.

section 300, subdivision (b).  The juvenile court sustained the petition and ordered Jeany removed from Mother and Jeany's alleged father, Lazaro G.  The court denied family reunification services to Mother pursuant to the bypass provisions in section 361.5, former subdivision (b)(10) and subdivision (b)(13).[3]  The court instructed Mother to file a section 388 petition "when appropriate."

On June 29, 2009 the juvenile court granted Mother's section 388 petitions as to Yazmin and Joselyn, reinstated jurisdiction over Yazmin, terminated maternal grandmother's guardianship, and placed the children with Mother under Department jurisdiction.[4]  On November 24 the court released

---

[3]     Section 361.5, subdivision (b)(10)(A) (formerly codified at section 361.5, subdivision (b)(10), without subparagraphs), provides that reunification services need not be provided to a parent where the juvenile court terminated reunification services for any sibling (or half sibling) of the dependent child after the sibling has been removed from the parent, and the parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling.  Section 361.5, subdivision (b)(13), provides in part that the court may bypass reunification services if the parent "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment . . . on at least two prior occasions . . . ."

[4]     The juvenile court found then-14-year old Jorge a ward of the court pursuant to section 602 and ordered that jurisdiction remain terminated as to him.

4

Jeany to Mother as well and terminated jurisdiction over Yazmin, Joselyn, and Jeany.

Jayleen was born to Mother and Frederico P. (Father)[5] in December 2008. On March 14, 2011 the Department filed a dependency petition on behalf of Jayleen pursuant to section 300, subdivision (b), and on behalf of Yazmin, Joselyn, and Jeany pursuant to section 300, subdivisions (b) and (g).[6] On April 27 the juvenile court sustained the allegations under subdivision (b) that Mother had an "unresolved history of substance abuse including cocaine, marijuana and alcohol, which periodically renders [her] incapable of providing for the children"; in February 2011 Mother tested positive for amphetamine and methamphetamine; and Mother had mental and emotional problems, including depression, that interfered with her care for the children and placed them at risk of harm. The court declared the children dependents of the court and released them to Mother under Department supervision on the condition Mother live with maternal grandmother. The court ordered family maintenance services and Mother to participate in individual counseling to address case issues, including mental health and relapse prevention, as well as drug counseling and random testing.

---

[5]     Father is not a party to this appeal.

[6]     Section 300, subdivision (g), provides for juvenile court jurisdiction where, among other grounds, "[t]he child has been left without any provision of support," "the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child," or "the whereabouts of the parent are unknown, and reasonable efforts to locate the parent have been unsuccessful."

5

On July 13, 2011 the juvenile court sustained the allegation in the petition that Father had a history of substance abuse and was a current abuser of marijuana and alcohol, removed Jayleen from Father, and ordered reunification services. Father's case plan included individual counseling, drug counseling, and random drug testing. On November 30, 2011 the court sustained a section 387 supplemental petition as to Mother,[7] terminated the home-of-parent order, removed the children from Mother, and denied Mother reunification services under section 361.5, former subdivision (b)(10). Mother was deported to Mexico in October 2012 and lost contact with Jayleen.

On March 15, 2013 the juvenile court granted sole legal and physical of custody of Jayleen to Father after finding he was in compliance with his case plan, and the court terminated jurisdiction. On April 25, 2014 the court terminated Mother's parental rights as to Yazmin, Joselyn, and Jeany, who were adopted by maternal aunt Daniella J.

B.    *Jayleen's Current Dependency Proceeding*
      1.    *Referral and Petition*

On September 28, 2022 the Department received an immediate response referral alleging Father sexually abused then-13-year-old Jayleen. According to the referral, Jayleen reported that Father had been sexually abusing her for the past 10 years, and in a recent incident Father fondled her breasts and

---

[7]    The record does not contain details on the supplemental petition.

penetrated her vagina with his finger and penis.[8]  The sexual
abuse occurred when Jayleen's stepmother, Norma D., was not
around.

Norma reported to the social worker that she and Father
had been dating for 12 years, but they were not legally married,
and she did not have any legal rights over Jayleen.  However,
Norma had raised Jayleen from infancy, and Jayleen called her
"mom."  Norma stated that on September 27 Jayleen had been
caught at school with drugs and drug paraphernalia and Jayleen
then disclosed Father's sexual abuse to her.  Norma immediately
went to the police, and Father was arrested the following day.
Father reported he never touched Jayleen inappropriately and
denied any form of digital penetration or attempted penile
penetration.  He stated he and Jayleen had a misunderstanding a
few weeks earlier, they were not speaking, and Jayleen recently
began acting up.  Father admitted he had slapped Jayleen for not
doing her homework correctly two weeks earlier.  Father was
released from custody around October 1.

On October 3, 2022 a police detective reported to the
Department that the district attorney declined to prosecute the
sexual abuse case against Father for lack of evidence.  A forensic
examination of Jayleen showed no signs of physical abuse,
although in a forensic interview Jayleen provided a consistent

---

[8]     Jayleen subsequently told a social worker that Father had
touched her inappropriately since she was three years old, and
Father digitally penetrated her vagina approximately three times
since she had turned 12.  On four occasions, beginning when
Jayleen was six, Father either attempted to or penetrated her
vagina with his penis.

and detailed account of her abuse.  On October 5 the juvenile court[9] removed Jayleen from Father, and she was placed in foster care.

On October 7, 2022 the Department filed a petition on behalf of Jayleen under section 300, subdivision (b)(1) and subdivision (d), alleging Father sexually abused Jayleen from ages three to 13, including incidents in 2019 and 2021 when Father penetrated Jayleen's vagina with his penis.  The same day the Department filed a detention report stating Mother's whereabouts were unknown, and "[p]er child, she has not seen or spoken to her mother in over 10 years and does not know her." On October 10 the juvenile court[10] ordered Jayleen detained from Father.  The court ordered the Department to continue efforts to locate and contact Mother.

2.    *Department reports and jurisdiction hearing*

In the December 1, 2022 jurisdiction and disposition report, the Department stated it had been unable to locate Mother, who could not be found at her last known addresses.  Father said he knew Mother was a drug addict who used methamphetamine when he first met her, and when Jayleen was an infant he brought Mother to an inpatient rehabilitation center, where she stayed for six months.

Jayleen told the social worker she had not seen Mother since she was three years old and had only "faint" memories of Mother and the maternal relatives.  She considered Norma to be

---

[9]    Judge Debra R. Archuleta.

[10]    Juvenile Court Referee Robin R. Kesler.

her "mom" and Norma's older daughter Vanessa to be her "sister." Jayleen did not want to have visits with Father because she was angry at him for denying her allegations of abuse, but she hoped to have visits with Norma and Vanessa.

On January 4, 2023 the Department filed an addendum report stating that in December 2022 it located Mother through maternal relatives, and a social worker interviewed Mother by telephone on December 28. Mother reported she was undocumented and had been living in Bell Gardens for less than a year. Mother was born in Mexico and first emigrated to the United States around 2001. Mother began using drugs when she was 17 years old, and she used marijuana, alcohol, methamphetamine, and cocaine to escape her problems, including childhood sexual abuse.

Mother reported that in 2008, when she became pregnant with Jayleen, she enrolled in a two-year treatment program that she completed in 2011. Mother was homeless after leaving the treatment program and left her five children with maternal grandmother so they would not be homeless. Around this time, she was arrested while staying at a house that was possibly used for drug or human trafficking. She claimed that although she was not involved in criminal activity, she could not afford a lawyer and was incarcerated for six months. Mother did not know how to contact Father for visits with Jayleen and lost touch.

Mother was deported to Mexico in 2012, and she lived in Tijuana until 2017. Mother stated that during this period she stopped using all substances and focused on returning to the United States to be near her children. However, by the time she returned to California in 2017, Father and Jayleen had moved,

9

and Mother was afraid to contact law enforcement to find them. Mother reported she had remained sober since 2011 and she occasionally attended 12-step meetings. Mother wanted Jayleen to have an opportunity to know her and the maternal relatives, she hoped to have monitored visitation with Jayleen soon, and she said she would comply with any court orders to reunify. The Department scheduled Mother for an on-demand drug test to take place in January 2023.

When the Department informed Jayleen it had made contact with Mother and maternal relatives, Jayleen became emotional and expressed that she was upset with Father for keeping the maternal family away from her; Jayleen wanted to meet Mother as soon as possible. The Department recommended Mother have monitored visitation with Jayleen and be provided with reunification services, including drug and alcohol testing, counseling, and a full treatment program if she tested positive.

In the January 10, 2023 last minute information for the court, the Department reported that on January 3 Mother tested positive for methamphetamine, amphetamine, and marijuana. The Department expressed concern that Mother had not been forthcoming about her current substance abuse, having reported she had been sober for over a decade. After reviewing the record of Mother's prior dependency proceedings, the Department recommended against reunification services based on Mother's recent test results, her long-term history of substance abuse, and her failure to reunify with Jayleen's half siblings. However, Mother's first in-person, monitored visit with Jayleen "went well," Jayleen had an opportunity to meet some of her half siblings, and the Department was exploring maternal aunt Daniella as a possible placement.

At the January 11, 2023 jurisdiction hearing, the juvenile court[11] sustained the petition as alleged, finding Jayleen's allegations of sexual abuse were consistent and credible. The court took judicial notice of the minute orders of the prior dependency proceedings involving Jayleen and her half siblings. The Department recommended based on Mother's dependency history that the court bypass reunification services. The court ordered the Department to provide Mother with referrals for weekly, random, and on-demand drug testing and for Mother to have monitored visits with Jayleen for at least two hours per week. The court continued the disposition hearing to February 3.

### 3.     *Last minute information and disposition hearing*

In the February 2, 2023 last minute information for the court, the Department reported that Mother visited with Jayleen twice in January, in addition to telephone calls. The social worker stated the visits had gone very well, and Mother "engages with Jayleen appropriately and Jayleen appears happy to visit with Mother." The social worker and caregiver both noted that Jayleen appeared to be in better spirits, making improvements to her appearance and mood, since meeting with Mother. Jayleen did not want any visitation or contact with Father, although she continued to want to have visitation with Norma. The social worker informed Jayleen the Department was evaluating prospective placement in the home of maternal grandmother, and Jayleen reported she would be happy to live with her maternal

---

[11]     Judge Daniel Zeke Zeidler presided over the jurisdiction and disposition hearings.

11

relatives.  Mother had a second drug test on January 26, and she tested negative.

With respect to her January 3 positive drug test, Mother admitted she used methamphetamine, stating the sudden news and prospect of having Jayleen back in her life gave her mixed feelings.  Mother did not believe she relapsed into drug addiction, but she accepted the need for treatment and planned to enroll in a treatment program and submit to drug testing.  The Department provided Mother with referrals for parenting, sexual abuse awareness, substance abuse counseling, and individual counseling.

At the February 3, 2023 disposition hearing, Mother's attorney requested the juvenile court grant Mother reunification services, noting that recent visits had been going well, Jayleen was happy to visit with Mother, and both the caretaker and social worker observed that Jayleen's mood and spirits had improved. Mother tested negative for drugs on January 26 and was going to enroll in recommended services.  Minor's counsel argued that although Mother's presence in Jayleen's life was important and having a positive impact—and the attorney favored continued visitation—she was concerned Jayleen's nascent relationship with Mother would be set up for failure if Mother failed to reunify, especially because Mother had only one clean drug test. The attorney argued Mother was not ready to reunify and it would not be in Jayleen's best interest to start the reunification process without being able to maintain consistency.  Once Mother stabilized her life and began the services referred by the Department, she could file a section 388 petition seeking reunification services.

After hearing argument, the juvenile court declared Jayleen a dependent of the court and removed her from Father's custody. The court denied Mother reunification services under section 361.5, subdivision (b)(10)(A), finding by clear and convincing evidence Mother's reunification services as to Jayleen's half siblings had been terminated, and Mother had not made reasonable efforts to address the issues that led to the siblings' removal. The court further stated it "cannot find by clear and convincing evidence that it's in the best interest of the child, after all of these years, to have the mother not being in her life, to grant . . . the mother reunification services." The court ordered supervised visitation for Mother a minimum of four hours per week with Department discretion to liberalize. The court ordered reunification services for Father, but denied visitation for either Father or Norma outside of conjoint therapy with Jayleen.

Mother timely appealed.

## DISCUSSION

A.  *Governing Law and Standard of Review*

"A juvenile court is generally required to order reunification services for a parent 'whenever a child is removed' from that parent's custody." (*In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1271 (*Jayden M.*), quoting § 361.5, subd. (a); see *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1120 (*Jennifer S.*) ["The purpose of reunification efforts is to 'eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible.'"].) However, "in

13

certain statutorily enumerated situations"—known as "bypass provisions"—the Legislature has "granted juvenile courts discretion to decide whether reunification services are 'in the best interest of the child.'" (*Jayden M.*, at p. 1271, citing § 361.5, subds. (b) & (c)(2); accord, *Jennifer S.*, at p. 1121; see *In re A.E.* (2019) 38 Cal.App.5th 1124, 1141 [Section 361.5, subdivision (b), provides that "'[r]eunification services need not be provided' if the court finds 'by clear and convincing evidence' that any of 17 enumerated bypass provisions apply."].)

"Consonant with the general presumption in favor of mandatory reunification services, the bypass provisions are 'narrow in scope' and reach situations where "'the likelihood of reunification'" is "'so slim'" due to a parent's past failures that 'expend[ing]' the Department's "'scarce'" resources on reunification services is likely to be 'fruitless,' or when 'attempts to facilitate reunification' would otherwise not 'serve and protect the child's interest.'" (*Jayden M.*, *supra*, 93 Cal.App.5th at p. 1271; accord, *Jennifer S.*, *supra*, 15 Cal.App.5th at pp. 1120-1121; *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478.) "By making the grant of reunification services discretionary in these situations, the bypass provisions aim to 'focus reunification efforts' and resources on the cases 'most likely to succeed' with reunification." (*Jayden M.*, at p. 1271; accord, *In re Joshua M.* (1998) 66 Cal.App.4th 458, 471.)

Here, the juvenile court denied Mother's reunification services under section 361.5, subdivision (b)(10)(A), which provides, "Reunification services need not be provided to a parent" if the juvenile court "finds, by clear and convincing evidence," that "the parent . . . failed to reunify with [a] sibling or half sibling" of the dependent child; the juvenile court in the prior

14

dependency case "ordered termination of reunification services"; and the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . from that parent."

"A 'reasonable effort to treat' a problem means just that. The question is not whether the parent has ""cure[d]"" or "'abolished'" the problem [citations], or whether the parent has 'attained' a "'certain level of progress.'" [Citation.] Instead, the focus is on the parent's effort. It is not enough to show 'any' effort, even a genuine one. [Citation.] '[L]ackadaisical or half-hearted efforts' will also not do." (*Jayden M., supra*, 93 Cal.App.5th at p. 1276, italics and fn. omitted; accord, *Jennifer S. supra*, 15 Cal.App.5th at p. 1121.) "Instead, the effort must be reasonable, and reasonableness is assessed by looking to (1) the duration of the parent's effort, (2) the 'extent and context' of the parent's effort, and (3) other factors related to the 'quality and quantity of those efforts.' [Citation.] The parent's progress, or lack thereof, 'both in the short and long term'—while not dispositive—is nevertheless relevant 'to the extent it bears on the reasonableness of the effort made.'" (*Jayden M.*, at p. 1276, italics omitted; accord, *Jennifer S.*, at p. 1121; *R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 915.)

The court's inquiry under section 361.5 does not end there: "[O]nce the juvenile court determines that a parent is described by subdivision (b)(10) of that statute, it shall not order reunification services for that parent 'unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child.' (§ 361.5, subd. (c)(2).)" (*Jennifer S., supra*, 15 Cal.App.5th at p. 1124.) "In the second step, which presupposes the Department has carried its initial burden, the

15

burden shifts to the parent to prove that it is in the child's best interest for the juvenile court to exercise its discretion to provide reunification services in this case." (*Jayden M., supra,* 93 Cal.App.5th at p. 1272; accord, *In re I.A.* (2019) 40 Cal.App.5th 19, 24.)

"In exercising this discretion, the court may consider a variety of factors relevant to the child's best interest, including (1) the parent's ""current efforts and fitness,"" (2) the parent's ""history,"" (3) the ""gravity of the problem"" that led to the assertion of dependency, (4) the "'strength of the bonds'" between the child and the parent and between the child and the current caregiver, and (5) the ""child's need for stability and continuity.""" (*Jayden M., supra,* 93 Cal.App.5th at pp. 1272-1273; accord, *In re G.L.* (2014) 222 Cal.App.4th 1153, 1164 (*G.L.*).) "'[A]t least part of the best interest analysis must be a finding that further reunification services have a likelihood of success. In other words, there must be some "reasonable basis to conclude" that reunification is possible before services are offered to a parent who need not be provided them.'" (*G.L.*, at p. 1164; accord, *In re William B.* (2008) 163 Cal.App.4th 1220, 1228-1229.)

"We review a juvenile court's determination that the Department has carried its initial burden in the first step for substantial evidence." (*Jayden M., supra,* 93 Cal.App.5th at p. 1273; accord, *Jennifer S., supra,* 15 Cal.App.5th at p. 1121.) "In so doing, we ask whether there is sufficient evidence in the record that is reasonable, credible and of solid value—when viewed in the light most favorable to the juvenile court's determination—for a reasonable trier of fact to conclude that the Department carried its burden by clear and convincing evidence." (*Jayden M.,* at p. 1273; accord, *Jennifer S.*, at pp. 1121-1122

16

["[W]e do not make credibility determinations or reweigh the evidence. . . . Rather, we 'review the entire record in the light most favorable to the trial court's findings to determine if there is substantial evidence in the record to support those findings.'"]; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005 ["[W]hen presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof."].) However, we review the juvenile court's ultimate determination as to whether ordering or bypassing reunification services is in the child's best interest for abuse of discretion. (*Jayden M.*, at p. 1273; *In re A.E., supra,* 38 Cal.App.5th at pp. 1140-1141; *Jennifer S.*, at pp. 1124-1125.)

B.      *Substantial Evidence Supports a Finding Mother Did Not Make a Reasonable Effort To Treat Her Substance Abuse*

Mother concedes the first requirement of section 361.5, subdivision (b)(10)(A), has been met: Mother previously failed to reunify with Jayleen's four half siblings. Nor does Mother dispute the half siblings were removed from her in the prior dependency proceedings because of her substance abuse. Rather, Mother contends that substantial evidence does not support the juvenile court's finding she failed to make reasonable efforts to treat her substance abuse problem. Specifically, she argues she completed a drug treatment program and court-ordered services in 2008, and after 2011 she remained sober for more than a decade. Although Mother used methamphetamine once due to the stress of rediscovering Jayleen and learning of Father's

17

sexual abuse, Mother tested negative for drugs after a single positive test in January 2023. Mother asserts that although her efforts to address her substance abuse were "not perfect," they were "reasonable." However, substantial evidence supports the court's contrary finding that her efforts were not sufficient to warrant the granting of reunification services.

The record shows Mother abused drugs for decades, she cycled between treatment, sobriety, and relapse, and her efforts to care for and reunify with her children repeatedly faltered due to her relapses. Mother began using drugs, including methamphetamine, cocaine, and marijuana when she was 17 years old. In 2004 and 2005 the juvenile court removed Jorge, Yazmin, and Joselyn from Mother, and in 2006 it terminated her reunification services after finding she was noncompliant with a case plan that included drug treatment and testing. Although Mother completed a 12-step treatment program, participated in services between 2006 and 2008, and reunified with her children in 2009, by 2011 Mother relapsed again, and the court took jurisdiction and later removed then-three-year-old Jayleen and her half sisters, sustaining allegations that Mother had a positive test for methamphetamine and an "unresolved history of substance abuse."

Mother asserts that notwithstanding her unsuccessful efforts to address her substance abuse in the prior dependency proceedings, she remained sober from 2011 until December 2022. But this assertion is supported only by Mother's statement to the social worker. There is no corroborating evidence Mother maintained her sobriety or participated in recovery programs either in Mexico (from 2012 to 2017) or after she returned to the United States (from 2017 to 2022). And Mother's positive test for

18

amphetamine, methamphetamine, and marijuana on January 3, 2023—just weeks after the Department located her and she promised to do whatever necessary to reunify—cast doubt on Mother's assertion that she maintained her sobriety. Further, a single clean test on January 26 and a promise to enroll in services do not establish reasonable efforts to address her drug problem at the time of the February 3 disposition hearing.

*Jayden M., supra*, 93 Cal.App.5th 1261, relied on by the Department, is instructive. In that case, as here, the mother struggled with addiction for more than two decades, leading to dependency jurisdiction, removal of her children, and a failure to reunify with Jayden's five half siblings. (*Id*. at p. 1268.) The mother made "sporadic effort[s]" to treat her addiction, including a rehabilitation program, classes, and 12-step meetings, but she "repeatedly relapsed." (*Id*. at pp. 1268-1269.) After Jayden was born with opiates in his blood and signs of neonatal exposure to morphine and amphetamine, the mother made an "intermittent effort" to address her addiction, attending classes and programs, but she failed to complete any program successfully at the time of the disposition hearing; however, the mother consistently tested negative for the four months leading up to the hearing. (*Id*. at p. 1269.)

Affirming the juvenile court's order bypassing reunification services under section 361.5, subdivisions (b)(10)(A) and (b)(11)(A),[12] the Court of Appeal held there was substantial

---

[12] Section 361.5, subdivision (b)(11)(A), provides that the juvenile court may bypass reunification services where parental rights over a sibling or half sibling were permanently severed,

19

evidence the mother's efforts were "not reasonable against the backdrop of her entire drug history." (*Id.* at p. 1276.)  First, although the mother's recovery efforts after the dependency petition had been filed as to Jayden were "a commendable start," her attendance in programs had been spotty and she "only started 'making great strides staying committed to long term recovery'" in the final few weeks before the disposition hearing. (*Ibid.*)  Further, "mother's four months of uneven effort [was] a drop in the bucket when viewed in the larger context of a 20-year history of serious and consistent drug abuse." (*Id.* at p. 1276; see *Jennifer S., supra*, 15 Cal.App.5th at p. 1124 [where father had a "long-term substance abuse issue," his "minimal efforts" in treatment "mere weeks" before the disposition hearing, including participation in outpatient treatment, parenting classes, and two negative tests, did not constitute reasonable efforts under section 361.5, former subdivision (b)(10)].)  Moreover, the juvenile court's finding in *Jayden M.*, as here, was supported by evidence the mother had "repeatedly relapsed after treatment and/or periods of sobriety in the past," consistent with the "conventional wisdom and practical reality that short and recent periods of sobriety are often not enough to counter a longstanding pattern of use and relapse." (*Jayden M.*, at p. 1277.)

Mother argues that *Jayden M.* is inapposite because in this case the Department "proved only a single use [of drugs] during the preceding eleven years."  Although the Department had the burden to prove by clear and convincing evidence that Mother's effort to address her drug problem was not reasonable, we defer

and the parent failed to make a reasonable effort to address the problem that led to the sibling's removal.

to the juvenile court's credibility determinations and weighing of the evidence. (*Jayden M., supra*, 93 Cal.App.5th at p. 1273; *Jennifer S., supra*, 15 Cal.App.5th at p. 1122.)  The court impliedly discounted Mother's uncorroborated statement she was sober for 11 years, leaving just two data points regarding her current drug use: a positive test on January 3, 2023 and a negative test on January 26.  Moreover, as of the February 2023 disposition hearing, Mother had not enrolled in any treatment program.  In light of Mother's admitted decades-long cycle of relapse and recovery, her failure to enroll in any treatment program despite her promise to do so, and only one negative test less than two weeks before the disposition hearing, Mother's efforts, while commendable, were not reasonable. (*Jayden M.*, at p. 1277; *Jennifer S.*, at p. 1124.)

C.      *The Juvenile Court Did Not Abuse Its Discretion in Finding Mother Failed To Show Reunification Was in Jayleen's Best Interests*

Mother argues the juvenile court abused its discretion in denying services under section 361.5, subdivision (c)(2), because Mother had "quickly become a positive force in [Jayleen's] life."  Although the record shows Mother's reconnection had a positive emotional and physical impact on Jayleen, and Jayleen wished to develop a relationship with Mother, it does not follow, as Mother contends, that it would "only serve [Jayleen's] interests to attempt reunification with Mother."  Considering the relevant factors, the court did not abuse its discretion in finding reunification was not in Jayleen's best interests.

With respect to the first two factors discussed in *Jayden M., supra*, 93 Cal.App.5th at pages 1272 to 1273 and *G.L.,*

21

*supra*, 222 Cal.App.4th at page 1164—Mother's history and her current efforts and fitness—as discussed, Mother had a long history of drug abuse, relapse, removal of her children, and failures to reunify; and Mother tested positive for methamphetamine within weeks of reconnecting with Jayleen and promising to do whatever was necessary to reunify. Her single negative drug test and unfulfilled promise to enroll in services did not establish her fitness as a parent at the time of the disposition hearing. The third factor, the gravity of the problem that led to the assertion of dependency (*Jayden M.*, at pp. 1272-1273), is not relevant here: the court asserted dependency jurisdiction based on the severe sexual abuse by Father, but those allegations do not affect our analysis whether Jayleen should reunify with Mother.[13] As to the fourth factor, the strength of the bond between Jayleen and Mother, although Jayleen was eager to develop a relationship with Mother, there was no preexisting bond—prior to December 2022 Jayleen had no memory of Mother and thought of Norma as the only mother she had ever known.

The final and paramount factor here is Jayleen's """"need for stability and continuity.""""" (*Jayden M., supra*, 93 Cal.App.5th at pp. 1272-1273.) Jayleen's life has been deeply destabilized by

---

[13] Cases that discuss the third factor are ones where the grounds for the current dependency are related to the grounds for the prior dependency proceedings and involve the same parent or parents. (See, e.g., *In re Ethan N.* (2004) 122 Cal.App.4th 55, 65-66 [where death of sibling due to mother's drug abuse and neglect was the basis for dependency jurisdiction, the gravity of mother's drug problem weighed against a finding that reunification was in child's best interests].)

Father's abuse and her removal from Father and Norma. It was too early to know whether Mother would bring stability and continuity to Jayleen's life, or destabilize it further, which will depend in large part on Mother's ability to achieve sobriety. (*G.L., supra*, 222 Cal.App.4th at p. 1164 ["there must be some 'reasonable basis to conclude' that reunification is possible before services are offered"].) The juvenile court charted a reasonable course to protect Jayleen's interests with a disposition order that authorized expanded visitation so that Jayleen could build a bond with Mother and the maternal relatives, while bypassing reunification services given the lack of a reasonable basis to believe reunification would succeed. The Department provided Mother with referrals for drug treatment and counseling, and Mother can bring a section 388 petition to restore reunification services if she establishes stability and sobriety in her own life.[14]

---

[14] Mother contends the fact that permanency planning would not commence immediately because Father was granted reunification services weighs in favor of granting Mother reunification services because the provision of services would not delay Jayleen's adoption. However, the juvenile court in moving slowly and bypassing reunification services did not abuse its discretion because any delay in permanency planning during Father's reunification period also means Mother will have additional time to establish grounds to file a section 388 petition seeking reunification services.

## DISPOSITION

The February 3, 2023 disposition order denying Mother reunification services is affirmed.

FEUER, J.

We concur:

SEGAL, Acting P. J.

MARTINEZ, J.